UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
Joyce Vignato,                                              MEMORANDUM
                                    Plaintiff,              & OPINION


                        -against-


                                                           03CV4553(SLT)

Jo Anne B. Barnhart,
Commissioner of Social Security,


                                    Defendant.
--------------------------------------------------X
TOWNES, U.S.D.J.

        Defendant's motion for Judgment on the Pleadings is denied.  Plaintiff's cross-motion for

Judgment on the Pleadings is granted, in part, and denied, in part.  The Court remands this matter

for further proceedings.


I.        *Facts and Procedural History*

        Joyce Vignato ("Vignato" or "Plaintiff") is 39 years old.   She graduated high school with

a special education diploma and began working for her father's business, where her job consisted

of assembling lampshades.  (Administrative Transcript ("Tr.") 30.)  Though the record reflects

that this may be her second application for Social Security Income ("SSI") disability benefits,

her September 17, 2001 application is the only one before this Court.  In it, she is alleged to have

a "learning disability and low I.Q. – difficulty with others," and to have been unable to work

since March 1996, when her father discharged her due to the declining success of his business.

(Tr. 55.)   Plaintiff's application was denied, Tr. 42-46, and she requested a hearing before an

Administrative Law Judge ("ALJ").

The record presented to the ALJ contained evidence that Plaintiff has suffered from learning disabilities since the age of seven, including, *inter alia*, a report from a school psychologist finding her to be functioning "on an educably retarded level," a neurologist's report that she could not read and had "definite perceptual problems" at age 12 but no neurological impairment, and a diagnosis of minimal brain dysfunction and dull normal intellect. (Tr. 128-143.) Against the vigorous protest of her parents, Vignato was eventually placed in special education. Plaintiff testified before the ALJ that she cannot drive long distances because of her inability to read signs, and she cannot fill out applications, count change or handle money. (Tr. 28-30.) Plaintiff reads at a first grade level and performs spelling and arithmetic at a second grade level. (Tr. 104.)

Plaintiff has had one job. At her father's business, she used a glue machine to assemble lamp shades. (Tr. 30.) She has not worked since being laid off from that business and claims that she has attempted to find work, but that the combination of her inability to read, deal with money, travel far from home and find child care have precluded her from finding employment. (Tr. 31.) Plaintiff cannot shop or run errands without the assistance of her mother, with whom she spends a greater part of the work day. (Tr. 34.) She can perform simple arithmetic but not multiplication or division and has problems concentrating during conversations. (Tr. 35.)

The medical evidence considered by the ALJ included an intellectual evaluation performed by Dr. Joseph Andrews on December 16, 1999. (Tr. 125-127.) The report contained the following findings:

- "Speech and language skills were adequate.
- "The claimaint was able to recall and understand instruction."
- "Attention and concentration were good."

- "Verbal comprehension subtests were generally within the mildly retarded range, i.e., vocabulary development, arithmetic reasoning, social comprehension and the ability to abstract and generalize. General fund of information was borderline and short term auditory memory was low average. All subtests scores within the perceptual organization area are all within the deficient range, i.e., ability to differentiate essential from non-essential details, ability to involve herself in sequential reasoning, constructive spatial relations, visual motor learning speed and non-verbal problem solving skills."
- "Modes of Living: The claimant is able to dress, bathe, and groom herself...cook, prepare food, engage in general cleaning, laundry."
- "The claimant does not manage her own funds."
- "The limitations cited have to do with reduced cognitive ability." (Tr. 126-127.)

Based on the above, and Plaintiff's IQ score of 63, Dr. Andrews' diagnosis was mild

mental retardation. (Tr. 127.)

Plaintiff submitted to a second examination on October 13, 2001. Dr. Jacqueline

Hernandez made the following findings:

- "Speech and language skills appeared below age appropriate being that she had a lot of word retrieval difficulties and had limited expressive language skills"
- "She did require repetition of instructions because she did have difficulty understanding."
- "Her attention and concentration were appropriate."
- "The claimant's overall cognitive functioning fell in the deficient range. Despite the claimant's deficient cognitive functioning, it is felt that from analyzing her adaptive skills the claimant is not performing at a deficient range. The claimant is more likely performing at a borderline range of cognitive functioning. Both verbal and nonverbal scores appeared to be equally developed and also fell in the deficient range."
- "The claimant's range of functioning varied from the low average range to the deficient range. The claimant seems to have a relative strength in the areas of sequential skills which fell in the low average range. She obtained borderline scores in non-concept formation and visual-motor accuracy and speed short term auditory memory. She obtained deficient scores in the areas of fund of factual knowledge, word knowledge, computation skills, social awareness, abstract thinking skills, attention to detail, and ability to replicate abstract designs using blocks. Academic screening was done using the WRAT-III, which indicates significantly depressed academic skills which look at first grade level in reading, decoding area, and second grade equivalent in arithmetic and spelling."
- "In summary, the claimant appears to have significant depressed scores in both academic and cognitive functioning."
- "The claimant indicates she is able to do basic cooking and cleaning...hobbies include cutting the lawn and taking care of her baby."

- "In summary, the claimant does appear to have deficient cognitive functioning and significant depressed academic skills. (Tr. 104-105.)

Based on the above, Dr. Hernandez concluded that Plaintiff suffers from borderline intellectual functioning. (Tr. 105.)

The ALJ concluded, on the basis of the aforementioned reports, in conjunction with two state agency evaluations indicating plaintiff does not suffer from marked limitations in functioning, Tr. 107-124, and the testimony of a vocational expert, Tr. 36-39, that Plaintiff is not mentally retarded and could perform "simple, routine" work, and thus is not disabled under the Social Security Act.

Plaintiff appealed her decision to the Appeals Council, submitting new evidence in the form of letters from her father alleging that Plaintiff's past employment with his company should not preclude her from qualifying for benefits. The Appeals Council denied Plaintiff's request.


II.     Discussion

        *Scope of Review*


        Judicial review of SSI benefit determinations is governed by 42 U.S.C. § 1383(c)(3) (1996), which expressly incorporates the standards established by 42 U.S.C. § 405(g)(1996). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then her decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla[;] [i]t means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence supports a

finding of the Secretary, the court must not look at the supporting evidence in isolation, but must

view it in light of other evidence in the record that might detract from such a finding, including

any contradictory evidence and evidence from which conflicting inferences may be drawn."

*Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

Nonetheless, the "substantial evidence" test applies only to the Commissioner's <u>factual</u>

determinations; similar deference is not accorded to the Commissioner's legal conclusions or to

the agency's compliance with applicable procedures mandated by statute or regulation. *See*

*Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"]

standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.").

Accordingly, the Commissioner's legal conclusions and compliance with applicable regulatory

and statutory mandates are reviewed <u>de novo</u>.

*SSI Disability Determinations*

SSI benefits are available to anyone who meets the statutory income and resource

requirements of 42 U.S.C. §§ 1382a & 1382b (1996), respectively, and who is deemed

"disabled" as that term is defined in 42 U.S.C. § 1382c (1996).

> A person is "disabled" when:
>
> he is unable to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a continuous
> period of not less than twelve months.

42 U.S.C.A. § 1382c(a)(3)(A)(West Supp. 1997). A "physical or mental impairment" consists of

"an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic technique."  _Id._ at § 1382c(a)(3)(D).  Nonetheless,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

_Id._ at § 1382c(a)(3)(B).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five, successive steps (the "Analysis").  _See_ 20 C.F.R. § 416.920 (1996); _Berry v. Schweiker_, 675 F.2d 464, 467 (2d Cir. 1982).  These steps may be summarized as follows:

> (1)      Is the claimant gainfully employed? If she is, then she is not disabled.  If she is not, then the analysis proceeds to the second step.

> (2)      Does the claimant have a "severe" impairment(s) – i.e., one that significantly limits her physical or mental ability to do basic work activities?  If she does not, then she is not disabled.  If she does, then the analysis proceeds to the third step.

> (3)      Does the claimant's impairment(s) meet or equal a "listed impairment?"  If it does not, then the analysis proceeds to the fourth step.  If it does, then she is disabled.

> (4)      Does the claimant's impairment(s) prevent her from doing her "past relevant work?" If it does not, then she is not disabled.  If it does, then the analysis proceeds to the fifth and final step.

> (5)      Does the claimant's impairment(s), considered in conjunction with her residual functional capacity, age, education, and past work experience, prevent her from engaging in other substantial gainful work reasonably available in the national economy?  If it does not, then she is not disabled.  If it does, then she is disabled.

6

_Id._  Thus, one can only be deemed "disabled" at the third and fifth steps of the Analysis, whereas

one can be deemed "not disabled" at every step except the third one.

In determining whether or not a particular claimant is "disabled." the combined effect of

multiple impairments must be taken into consideration by the Commissioner:

> [i]n determining whether an individual's physical or mental impairment or
> impairments are of sufficient medical severity that such impairment or
> impairments could be the basis of eligibility under this section, the Commissioner
> of Social Security shall consider the combined effect of all of the individual's
> impairments without regard to whether any such impairment, if considered
> separately, would be of such severity.  If the Commissioner of Social Security
> does find a medically severe combination of impairments, the combined impact of
> the impairments shall be considered throughout the disability determination
> process.

_Id._ at § 1382c(a)(3)(G).  However, "[t]he burden of proving disability is on the claimant."

_Mimms v. Heckler_, 750 F.2d 180, 185 (2d Cir. 1984).

In weighing the medical opinion evidence, the ALJ is obligated to adhere to the rules set

forth in 20 C.F.R. § 416.927(d) (1996).  These rules indicate that, generally, more weight is

given to the following: (1) opinions provided by physicians who have actually examined a

claimant; (2) opinions provided by a claimant's treating physicians; (3) opinions supported by

objective relevant evidence; (4) opinions that are more consistent with the record evidence as a

whole; (5) opinions of specialists about medical impairments related to their area of expertise;

(6) opinions that may be supported by any other factors the claimant brings to the

Commissioner's attention.  _Id._ at § 416.927(d)(1) - (6).  Nonetheless, certain ultimate

conclusions remain the exclusive province of the Commissioner.  These include the ultimate

determinations of whether a claimant is "disabled" within the meaning of § 1382c(a)(3)(A)

(1996), whether a claimant's impairment(s) meets or equals a "listed impairment," what the

claimant's residual functional capacity is, and the final assessment of vocational factors in

relation to the claimant's impairments. *Id.* at §§ 416.927(e)(1) - (2).

III.    ALJ's Determination

        In performing the Analysis, the ALJ held:

> The claimant has not engaged in substantial gainful activity since March 31,
> 1992. The record establishes the presence of severe impairments consisting of
> borderline intellectual functioning and a history of a learning disability. The
> claimaint does not have an impairment, or combination of impairments, that
> meets or equals the criteria of any impairment listed in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 [the "Appendix"]. In this connection, listed impairments
> under section 12.00 (mental impairments) were considered in particular. The
> claimant's representative argued that the claimant meets 12.05D. However, the
> requisite criteria for that and other relevant listings are absent from the medical
> records. There is no evidence in the record of marked limitation in any mental
> category of functioning or of episodes of decompensation. Furthermore, the
> claimant testified to essentially normal adaptive function, as will be described
> below. In reaching the conclusion that the impairments in question do not meet or
> equal a listed impairment, the [ALJ] has considered the opinions of the State
> agency medical consultant who evaluated this issue at the initial level of the
> administrative review process and reached the same conclusion (20 C.F.R.
> 404.1527(f), 416.927(f) and Social Security Ruling 96-6P).

(Tr. 14-15).

        The first two sentences in the passage clearly correspond to the first two steps of the

Analysis. Because the paragraph immediately following this passage begins the discussion of

whether Plaintiff has been able to perform relevant work (*i.e.*, the fourth step), the remainder of

the cited passage is the ALJ's analysis of the third step, which considers whether Plaintiff suffers

from a "listed impairment," one of the two steps in the Analysis at which a claimant can be

found disabled.

Though the ALJ says that "listed impairments under sections 12.00...were considered in particular," Tr. 14, the only subsection of section 12.00 that is analyzed with specificity is section 12.05D. (*Id.*) The ALJ found that the "requisite criteria for [section 12.05D] *and other relevant listings* are absent." (Tr. at 14-15) (emphasis added). However, no other relevant listings are mentioned or ruled out in detail.

Section 12.00 of the Appendix contains every type of mental disorder applicable to step three of the Analysis. 20 C.F.R. Part 404, Subpart P, Appendix 1. Section 12.05 deals specifically with mental retardation. It reads:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.      Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B.      A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D.      A valid, verbal, performance or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1.      Marked restrictions of daily living; or
> 2.      Marked difficulties in maintaining social functioning;
> 3.      Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.      Repeated episodes of decompensation, each of extended duration.

Appendix at 12.05.

It is not clear from the record which other "relevant listings" were considered, but because Plaintiff now contends that she meets the requirements of 12.05C, this Court must evaluate whether the ALJ considered Plainitiff's eligibility under that section,[1] as qualification under section 12.05C would end the analysis.[2]

That Plaintiff did not argue eligibility under 12.05C during the proceedings before the ALJ or Appeals Council is not fatal to her claim. "Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (rule that appellate courts will not consider issues not raised before trial court inapplicable to non-adversarial Social Security proceedings).

*Eligibility Under Section 12.05C*

Section 12.05 defines mental retardation as "significantly subaverage general functioning with deficits in adaptive functioning" manifested before age 22 (the "Threshold Requirements"). If a claimant meets the Threshold Requirements and *also* fulfills the criteria of one of the subsections (12.05A through 12.05D), the claimant has a listed impairment for mental

---

[1] Analysis of sections 12.05A and 12.05B is unnecessary, as Plaintiff is not dependent on others for "personal needs (e.g., toileting, eating, dressing or bathing)," a requirement under 12.05A, and Plaintiff's full scale IQ exceeds the maximum permitted under 12.05B.

[2] "If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity." *Schweiker*, 675 F.2d at 467.

retardation. Therefore, the absence of evaluation in the record of Plaintiff's second alleged

impairment under 12.05C is only significant insofar as Plaintiff is able to satisfy the Threshold

Requirements.

In step two of the Analysis, the ALJ determined "the record establishes the presence of

severe impairment consisting of borderline intellectual functioning and a history of learning

disability." (Tr. 14.)  This determination implies that the ALJ did not find Plaintiff to be

mentally retarded, as borderline intellectual functioning falls short of mental retardation.

However, if it is true that the ALJ determined that Plaintiff did not meet the Threshold

Requirements, there would have been no need to analyze the marked limitations requirement of

section 12.05D, which looks to the severity of *existing* mental retardation.  The ALJ focused on

the lack of evidence of marked limitations in functioning, which is relevant only to subsection

12.05D.  (Tr. 15 ("There is no evidence in the record of marked limitation in any mental

category of functioning or of episodes of decompression."); _Id._ ("Considerable weight has also

been given to the state agency review physicians' opinions that the claimant has no marked

limitations in function."))   The ALJ may have assumed, *arguendo*, that Plaintiff met the

Threshold Requirements but ultimately failed to prove the additional requirements of subsection

12.05D, but that is not apparent from the record.  Thus, it is unclear whether Plaintiff met the

Threshold Requirements.

Moreover, any conclusions of the ALJ made during step four of the Analysis that

supports a finding that Plaintiff is not disabled (in this case, the discussion of Plaintiff's adaptive

functioning) may not be considered in the context of step three.  _Baneky v. Apfel_, 997 F. Supp.

543, 547  (S.D.N.Y. 1998) ("As the ALJ's analysis of the medical and testimonial evidence was

11

undertaken in the context of the fourth step...and thus concerned plaintiff's residual functional

capacity in light of his IQ and all other claimed conditions, that analysis is not insightful in terms

of ascertaining which particular impairment(s) the ALJ found involved more than a *de minimus*

limitation."); *see* *also* *Aviles v. Barnhart*, 2004 WL 1146055, *6 (E.D.N.Y. May 11, 2004)

(Feuerstein, J.) (*quoting* same).

If this Court were to conclude that the ALJ determined that Plaintiff did not suffer from

mental retardation, it would be on the bases of (1) the ALJ's step two determination that Plaintiff

has borderline intellectual functioning, which is called into question by the ALJ's decision to

analyze the requirements of subsection 12.05D; (2) the ALJ's statement that "the claimant

testified to essentially normal adaptive functioning," when that evidence was not sufficiently

explained in the context of step three and there is substantial evidence to the contrary;[3] and (3)

psychiatric evaluations, Tr. 109, 115, ruling out each section 12.05 listing.  This Court cannot,

without a clearer statement, find that ALJ adequately addressed the Threshold Requirements in

this case.

---

[3] The American Psychiatric Association defines Mental Retardation as follows: "The
essential feature of Mental Retardation is significantly subaverage general intellectual
functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning
in at least two of the following skill areas: communication, self-care, home living,
social/interpersonal skills, use of community resources, self-direction, functional academic
skills, work, leisure, health and safety (Criterion B)."  Diagnostic and Statistical Manual of
Mental Disorders 41 (4th ed. 2000) ("DSM IV").  Section 12.05 also requires significant
subaverage general intellectual functioning, but only "deficits" in adaptive functioning, not
"significant limitations" as the DSM IV.  Because the bulk of the ALJ's discussion of Plaintiff's
adaptive functioning is in the context of step four and therefore not relevant to the step three
analysis, the ALJ did not adequately assess Plaintiff's adaptive functioning aside from the way(s)
in which her limitations prevent her from working, leaving the question of whether she suffers
from deficiencies of *any* adaptive functions insufficiently addressed.

*Additional Requirements*

If, on remand, Plaintiff is found to have "significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested...before age 22," she must

then show "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

mental impairment imposing an additional and significant work-related limitation of function" to

qualify under subsection 12.05C. It is undisputed that Plaintiff's full scale IQ is 63, satisfying

the first prong under section 12.05C. (Tr. 63, 126). However, as to the second impairment

alleged by Plaintiff – a learning disability – this Court cannot determine whether the ALJ made

a finding on its severity and impact on Plaintiff's ability to work, if any.

In *Baneky*, the District Court was unable to determine if the ALJ evaluated plaintiff's

eligibility under section 12.05C. 997 F. Supp. at 545. Recognizing the absence of not only

regulations explaining how to evaluate whether the claimant's second impairment imposed a

"significant" work-related limitation of function but also guidance from the Second Circuit on

this issue, the court remanded with instructions for the Commissioner to make a finding as to

whether plaintiff's additional limitation, "considered without regard to the claimant's low IQ,

would satisfy the 'severity' test set forth at step two of the [Analysis]." *Id.* at 545, 547. The

court reasoned:

> The actual wording of the second prong of Section 12.05C, "a physical or other
> mental impairment imposing additional and significant work-related limitations of
> function" is essentially the same as that of the step two severity requirement,
> which asks whether the claimant has "any impairment(s) which significantly
> limits his or her physical or mental ability to do basic work activities"... If
> "significant" requires something more than "severity"...then there would be little
> point in having a special category for those with limited IQs. If the "additional"
> limitation must satisfy more than the second step of the five-step analysis, then a
> qualifying "additional" limitation often would be sufficient in its own right to

13

> support a finding of disability, rendering Section 12.05C's provision for those with low IQ's superfluous.

*Id.* at 546; *accord Aviles*, 2004 WL 1146055, at *7 (adopting the "severity" test for determining the second prong of 12.05C and remanding for "the Commissioner [to] specifically determine whether any of plaintiff's limitations, except for his low IQ, satisfy the second element of Listing 12.05C.").

There is an absence of authority in this circuit indicating whether a learning disability is a separate disability from mental retardation. It is perhaps for this reason that Plaintiff supported the contention that the two are separate using only a guideline promulgated by the Social Security Administration for the evaluation of disabilities in children. Childhood Disability Evaluation Issues, 49, n.10, *available at* Pla.'s Mem. of Law, Ex. A. ("A diagnosis of [learning disability] based on academic achievement in reading, written expression, or mathematics which is substantially below expectation based on measured intelligence, age, and schooling can serve as an additional and significant impairment under Listings 112.05D and F."). However, other circuits have considered mental retardation to be separate from a learning disability, sometimes relying on the same document cited by Plaintiff. *See Lugo v. Barnhart*, 2003 WL 22025011, *9 (N.D. Ill. Aug. 28, 2003) ("This other distinct diagnosable impairment could be a learning disability.") (*quoting Hall v. Apfel*, 122 F. Supp. 2d 959 (N.D. Ill. 2000) (reviewing ALJ's decision of eligibility of child claimant, citing Childhood Disability Evaluation Issues and recognizing distinction between a learning disability and mental retardation); *cf. Michael v. Apfel*, 2000 WL 1006534 (N.D. Ca. July 7, 2000) (evaluating reading disability as an additional impairment to claimant's retardation). Therefore, should Plaintiff meet the Threshold

14

Requirements, the Commissioner must also establish whether her learning disability constitutes a

second, significant additional limitation of her ability to work.[4]

---

[4] With respect to the ALJ's findings under section 12.05D, Plaintiff argues that the ALJ's decision is "infected with errors of law and that the evidence of record persuasively demonstrates that Plaintiff is disabled." (Pla.'s Mem of Law at 11.) There is no indication that the ALJ failed to adhere to the Analysis or any other regulations in finding Plaintiff ineligible under section 12.05D. Furthermore, as far as findings of fact are concerned, the question before this Court is not whether "the record persuasively demonstrates that Plaintiff is disabled," but whether there is substantial evidence to support the ALJ's findings. The ALJ cited the absence of marked limitations in any category of functioning. (Tr. 15.) None of the medical evaluations cited marked limitations in any category relevant to section 12.05D. Specifically, the evaluations specifically asking the degree of Plaintiff's limitations in relevant areas (where "markedly limited" was one of five possible answers) strongly support the ALJ's findings, as Plaintiff was not found to have marked limitations in any category. (Tr. 107-108, 121.) Plaintiff's arguments even acknowledge the substantial evidence in support of the ALJ's findings. (Pla.'s Mem. of Law at 14-16) (pointing out the absence of Plaintiff's limitation in performing several activities of daily living; that Plaintiff is able to be social with friends and family; and that her concentration during testing was good, supporting the ALJ's finding under subsections 12.05D(1)(2) and (3).)

CONCLUSION

The Commissioner's motion for judgment on the pleadings is denied and Plaintiff's motion is denied in part and granted in part. Because the Court cannot determine from the record whether the ALJ discounted the application of 12.05C, the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

_____S/_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:          October 27, 2005
                Brooklyn, NY